UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

*********************************************************************

UNITED STATES OF AMERICA          4:22-CR-00081-44

VS.                               HOUSTON, TEXAS

DIANA MORENO-GUILLEN              JANUARY 27, 2023

*********************************************************************

TRANSCRIPT OF MOTION HEARING PROCEEDINGS
HEARD BEFORE THE HONORABLE ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE

*********************************************************************

APPEARANCES:

FOR THE GOVERNMENT:          MR. LEO JAMES LEO, III
                             MS. SHERIN SUSAN DANIEL
                             U.S. Attorney's Office
                             1000 Louisiana Street
                             Suite 2300
                             Houston, Texas 77002


FOR THE DEFENDANT:           MR. KENNETH W. MCGUIRE
                             McGuire Law Firm
                             P.O. Box 79535
                             Houston, Texas 77279


Official Court Reporter:     Lanie M. Smith, CSR, RMR, CRR
                             Official Court Reporter
                             United States District Court
                             Southern District of Texas
                             515 Rusk
                             Room 8004
                             Houston, Texas 77002

        Proceedings recorded by mechanical stenography,
transcript produced via computer.

**P R O C E E D I N G S**

MR. MCGUIRE:  Good afternoon, Your Honor.

THE COURT:  Is your client going to appear?

MR. MCGUIRE:  She is not, Your Honor.

THE COURT:  Okay.  We'll just let the Marshal know.

If your client is not going to appear, are you ready to proceed?

MR. MCGUIRE:  Yes.

THE COURT:  This is Cause Number 4:22-cr-81-44, United States of America versus Diana Moreno-Guillen.

Counsel, your appearances for the record.

MR. MCGUIRE:  Yes, Your Honor.  Kenneth McGuire for Ms. Moreno-Guillen.

MR. LEO:  Jimmy Leo and Sherin Daniel for the United States, Your Honor.

THE COURT:  The Court has before it an opposed motion to sever.

Counsel, your motion?

MR. MCGUIRE:  Your Honor, we read the government's response.

THE COURT:  I apologize.  Just to be clear for the record, your client is not present in the courtroom.  This hearing was scheduled for 2:00.  It's now 1:38.

First of all, are you comfortable proceeding earlier than the noticed time?

MR. MCGUIRE:  Yes, Your Honor.

THE COURT:  And is it my understanding that your client is waiving her appearance to appear at today's hearing?

MR. MCGUIRE:  Yes, she is.

THE COURT:  So, counsel, again?

MR. MCGUIRE:  Yes, Your Honor.  We filed a motion to sever.  The government filed a response that I think conceded most of the points that we raised.  They prepared a group of proposed counts for trial.  I reviewed that list of proposed counts.  It's in Entry 886-1, Your Honor, Exhibit A to their response.

And I think that grouping makes sense under the law.  I don't think we have any objection to that grouping.  Our objection was to having everybody tried at once, 75 defendants.  I didn't think that made sense.  So I think we're in agreement.

THE COURT:  So as to your opposed motion, do you want me to deny it or are you going to withdraw it?

MR. MCGUIRE:  Well, I don't believe the Court has granted -- I would like you to grant it and grant it on the counts as the government proposed, that grouping, because right now as it stands, I believe, Your Honor, we're all to be tried together.  I haven't seen an order granting --

THE COURT:  The grouping?

MR. MCGUIRE:  Yes.

THE COURT: Counsel?

MR. LEO: Yes, Your Honor. I know the last time we were here on that status we had proposed these groupings to the Court at suggestion of the Court, and I think that most people were in agreement this was the best way to proceed. So I think it does essentially moot his motion since his client is now in a situation where she's actually only with three other defendants.

THE COURT: Okay. And you're in agreement with that?

MR. MCGUIRE: I've looked at it, Your Honor, and that makes sense under the law as I understand it to limit it to that smaller group. I understand the government's argument and reasoning. I think that's a lot more appropriate than the initial grouping of 75.

THE COURT: Okay. Assuming that we proceed with the proposed grouping as outlined by the government, you're in agreement with proceeding in that fashion?

MR. MCGUIRE: We are, Your Honor.

THE COURT: Very well. Then your motion will be listed as mooted; and that way, we can remove it from the docket. If it changes, you can reurge it.

MR. MCGUIRE: Yes, Your Honor.

THE COURT: Anything else, Counsel?

MR. MCGUIRE: Yes, there is, Your Honor.

The last time we were here at the status

conference we mentioned that we have a discovery dispute with the government and we filed a letter for the Court before the last status. I have a copy of it here. I have a copy for the government if the Court would like to review it, but I thought this might be a good opportunity to informally address that.

The Court had mentioned that we were going to have, I guess, just the parties discuss this in chambers. I wasn't sure, but since we're here now...

THE COURT: Counsel.

MR. LEO: I wasn't prepared for it, but I'll address it as best I can.

THE COURT: If you will hand up a copy of the letter to Ms. Edwards and let me see what you're talking about here.

Have y'all conferred regarding these issues?

MR. MCGUIRE: Your Honor, I conferred with Ms. Lu before she had her daughter and we kind of reached an impasse of what the government was willing to provide and we discussed it with Mr. Sherin --

MR. LEO: Leo.

MR. MCGUIRE: -- Mr. Leo in the hallway after the last status and he wasn't in agreement either so we've conferred and we reached an impasse.

THE COURT: All right. What specifically would you like to address, counsel?

MR. MCGUIRE: Well, my request, Your Honor, for

discovery was for evidence regarding the government's, what they call an ALPR system, automated license plate reader system which was used in this case to detain and stop Ms. Moreno.

What I asked for was all of the license plate reader system reads of the location of my client, which that I was provided for one of the two systems.

I also asked for all of the locations of these cameras around the country of these two systems that were used in my client's case.

THE COURT:  The locations around the country?

MR. MCGUIRE:  Well, perhaps maybe the state of Texas would be the correct geographical limitation.

But the reasoning behind that, Your Honor, is the *Jones* case, *United States versus Jones* and the *Carpenter* case, *Carpenter versus United States* in 2018 talked about location tracking of defendants.  Both cases found that location tracking is a search under the Fourth Amendment. There was no warrant here applied.

THE COURT:  In regards to the movements of your client, did she move all about Texas; or are we talking about a specific area?

MR. MCGUIRE:  She moved from Houston -- from what I understand, because I wasn't provided all the data apparently that was obtained about her.  I was provided some of it.  She did move from Houston down to south of Corpus and I think

around Refugio south of Corpus Christi and she was tracked, Your Honor, for a period of over a year by the system.

THE COURT:  But she was not tracked in Abilene so I'm not sure why the locations of any cameras in Abilene would be relevant.

MR. MCGUIRE:  Well, the reason would be, Your Honor, this is a somewhat -- whether or not the Fourth Amendment applies to location tracking by automated license plate readers has not really yet been decided by any court that I've seen in the country.

The Massachusetts Supreme Court in 2000 issued an opinion saying one of the things that they would like to look at and they think are relevant under the *Carpenter* analysis is how comprehensive is this system?  How many locations are there?  Does it read everybody who travels at every one of these locations 24 hours a day, seven days a week?

The representations from the government are their systems do operate 24 hours a day, seven days a week and have been in operation for many, many years now.

I asked them how many license plates does that system read per year for the last three years?  They refused to provide that information to me.  How many individual license plates are read in the last three years?

That data would go to the issue of how comprehensive is this system.  That is relevant to an analysis

the Court is going to have to do at some point when we file our motion to suppress under the *Carpenter versus U.S.* test and also perhaps the *Jones* -- the *United States versus Jones*.

That's what the Massachusetts Supreme Court said they thought was relevant to answer this question.

THE COURT:  I'm not sure that that's binding precedent in the Houston Division of the Southern District of Texas, counselor.

MR. MCGUIRE:  It's not, Your Honor, but I have to make a record if I'm going to bring this up, a factual record if I'm going to appeal this up through the Fifth Circuit and perhaps the Supreme Court at some point on this issue.

The comprehensiveness of tracking was one of the issues at stake in *Carpenter* and also in *United States versus Jones*, although there were two groups of concurring opinions in *Jones.*  The Court remembers that was the attachment of a GPS tracker to a car.  Justice Scalia and his five-justice group said that was a search because they trespassed on the car.

The second group which was --

THE COURT:  Do you have any precedent from the Fifth Circuit where this type of information has previously been turned over?

MR. MCGUIRE:  I don't believe the question -- this particular question has never been raised, as far as I can

tell, the use of automated license plate readers.  It is de novo.

THE COURT:  So respectfully the answer is no?

MR. MCGUIRE:  No, I don't have any precedent, Your Honor.  The closest I got --

THE COURT:  Do you have any precedent from any other Federal Circuit regarding this question?

MR. MCGUIRE:  Not on automated license plate readers. The closest we got was a Massachusetts Supreme Court, which was interpreting *Jones* and *Carpenter* under the Fourth Amendment and they said these are some of the questions that we think are relevant.

THE COURT:  Respectfully to the Massachusetts Supreme Court, that's not precedent binding this Court.

MR. MCGUIRE:  We understand, Your Honor; but at the same time --

THE COURT:  You're making your record.  I understand.

MR. MCGUIRE:  We have to make a record.  We have to attempt to obtain this evidence to put it before the Court so it can then be heard at any subsequent level because if we don't, it will never be heard and they'll say we've defaulted it.

So those are the disputes, the discovery disputes we're looking at.  We are going to be filing a motion to suppress under the Fourth Amendment.

THE COURT:  Well, let's wait until the motion is filed before we argue it.

MR. MCGUIRE:  That's one way of handling it, Your Honor.

THE COURT:  That's the only way to handle it.

MR. MCGUIRE:  Fair enough.

THE COURT:  Counselor?

MR. LEO:  Your Honor, we have provided all the information that we have in regards to his client.  Where the pushback occurred was when he was asking for information on all of these systems and all of -- I think he wanted it over like a one-year span of every plate that was read on these particular readers for however long he asked for and that's -- it's just not relevant.

And it's been a while since I've read *Carpenter*.  I think it's a stretch what he's trying to prove; but without having just read *Carpenter*, I'm not really in a position to dispute that at this point.

What I can tell the Court is that to make us go back to these readers -- and the other issue we're having is a lot of this information gets deleted after a certain amount of time so the information is simply not going to be there.

And these readers are run by different entities so there's not -- there is no central database we can go to and say, "Hey, give us this info."  That doesn't exist.

So on top of the request just being completely unreasonable, we don't even know that we could comply with it if we even tried.

THE COURT:  Very well.

MR. MCGUIRE:  I dispute that, Your Honor.  I have seen some records that have been produced in response to Freedom of Information Act requests on other systems where they show up to in the Houston area in 2017 one of the systems where Freedom of Information Act requests resulted in disclosure of how many individual reads there were that year in the Houston area.  It was 745 million individual license plate reads, so the number is staggering.

I believe they can, if they made an effort, that they could get the information of how many reads there are because without having access to those reads, the system is absolutely useless.

THE COURT:  The Court has before it a letter from Mr. McGuire, counsel for the defendant, dated November the 16th.  He attaches to his letter a two-page, I assume, letter to Ms. Lu, counsel for the government, outlining a discovery dispute regarding the production of information from what the Court will call license plate readers.  Counsel has referred to them as license plate reader electronic surveillance systems.

In regards to the request made by counsel,

counsel has not cited to the Court -- after the Court has specifically asked for -- any precedent from the Fifth Circuit for the production of such information nor has he cited even the precedent from another circuit regarding this.  Counsel has cited precedent from the Massachusetts Supreme Court.

Based upon the lack of precedent for such request, the request is denied.

With that being said, Mr. McGuire, anything else?

MR. MCGUIRE:  No, Your Honor.  Am I permitted to renew my request after my motion?

THE COURT:  Yes, sir.  You are permitted to make whatever argument you deem in the best interest of your client. You've presented a request today; and based upon what has been presented, the Court has ruled.  If you put something in writing with additional authority, I'll be happy to revisit the issue.

MR. MCGUIRE:  Yes, Your Honor.

THE COURT:  Counsel for the government, anything else?

MR. LEO:  Nothing from the government, Your Honor.

THE COURT:  Very well.  Counsel, we're adjourned. You're excused.

MR. MCGUIRE:  Thank you, Your Honor.

MR. LEO:  Judge, since we at least have one defense counsel here, is the Court planning on setting a sort of status

conference so we can start game planning how we're going to proceed on the defendants?

THE COURT:  Am I planning on that?  I haven't planned on it, but I'll be happy to do that if that's what you need. If that will help with the management of the case, I'll be happy to do it.

MR. LEO:  Okay.  Maybe another, I guess, a status conference whenever the Court is available.

THE COURT:  Reach out to Ms. Edwards and so that she can game plan when that would be appropriate based upon the availability of defense counsel and what we need to get teed up.

MS. DANIEL:  Your Honor, we have a few groups that we have selected from the grouping which we believe that we would like to proceed to trial on the trial date so if Your Honor would like -- I don't know how Your Honor would like to proceed -- have those particular counsel from the status hearing or all of the defense counsel, but we have a little group listing as to which ones we're ready for.

THE COURT:  However you want to proceed, let Ms. Edwards know and she'll be happy to work with you on setting it up.

MS. DANIEL:  Okay.

THE COURT:  Have a good weekend, counsel.

MR. MCGUIRE:  You, too.

MR. LEO:  Thank you, Judge.

(The proceedings were adjourned.)

* * * *

REPORTER'S CERTIFICATE

I, Lanie M. Smith, CSR, RMR, CRR, Official Court Reporter, United States District Court, Southern District of Texas, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.


_____/s/ Lanie M. Smith_____
Official Court Reporter